Schoenberg vs. Adler.

SCHOENBERG, Appellant, vs. ADLER, Respondent.

*February 2 — February 27, 1900.*

*Gaming contracts: Consideration: Foreign statutes: Presumptions.*

| 105 | 645 |
| 110 | ²122 |
| 110 | ²123 |
| f110 | ²152 |
| 53 LRA | 650 |

1. Defendant, having lost at poker in Colorado, requested plaintiff to pay his losses, which he did. In an action to recover therefor, the statute of Colorado in reference to gaming contracts was not pleaded nor offered in evidence, but it was admitted, on the argument on appeal, that the statute of that state was virtually the same as sec. 4538, Stats. 1898. *Held*, that the case did not come under the statute of Wisconsin, but that, in the absence of objection in the trial court, and in view of such admission, the Colorado statute must be regarded as in evidence without objection, and that the agreement sued on was based upon an illegal consideration and therefore void.

2. The presumption that in certain classes of cases the statute of another state is the same as that of Wisconsin does not apply to penal statutes.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

For the appellant there was a brief by *W. J. & J. H. Turner*, attorneys, and *James H. Turner*, of counsel, and oral argument by *W. J. Turner*. They contended, *inter alia*, that the evidence showed that the contract was made *after* the game was *finished* and *settled*, was not complete until after the game, and was not a part of the illegal transaction, nor was the money lent or advanced at the time and place of the play or for the purpose of any game, and hence was out-

side of the statutes of Wisconsin and Colorado. *White v. Buss*, 3 Cush. 448; *Bangs v. Hornick*, 30 Fed. Rep. 97; *English v. Young*, 10 B. Mon. 141; *Williams, Black & Co. v. Carr*, 80 N. C. 294; *Kingsbury v. Suit*, 66 N. C. 601; *Powell v. Smith*, 66 N. C. 401; *Warren, Lane & Co. v. Hewitt*, 45 Ga. 501. To render the contract for the loan of money void, it must be loaned to some one in the game at the *time* of the game, as by playing or betting or in some way promoting or contributing thereto. *Smith v. Harris*, 3 Sneed, 553; *Petrie v. Hannay*, 3 Term, 418; *Swift v. Adkins*, 2 Lea, 137; *Seely v. Blanchard*, 22 La. Ann. 409; *Alcinbrook v. Hall*, 2 Wilson, 309; *Mooring v. Stanton*, Martin (N. C.), 49; *Jones v. Sevier*, 1 Littell, 50; *Chiles v. Coleman*, 2 A. K. Marsh. 687; *Greathouse v. Thockmorton*, 7 J. J. Marsh. 16, 19; 2 Beach, Mod. Law of Contracts, 1933; *Owen v. Davis*, 1 Bailey, 315; *Armstrong v. Am. Exch. Bank*, 133 U. S. 433, and cases cited; *Peck v. Briggs*, 3 Denio, 107; *White v. Wilson*, 37 S. W. Rep. 677; *Boggess v. Lilly*, 18 Tex. 200; *Roundtree v. Smith*, 108 U. S. 269, 276.

For the respondent there was a brief signed by *Felker & Felker*, and oral argument by *Frederic Felker*.

CASSODAY, C. J. This action was commenced January 5, 1898, to recover $822 alleged to have been paid, laid out, and expended by the plaintiff for and in behalf of the defendant, and at his special instance and request, July 9, 1894. The defendant answered by way of admissions, denials, and counter allegations, to the effect that all the moneys so claimed by the plaintiff, and every part thereof, were for moneys lost by the defendant in five several gambling games, called poker, and in all of which the plaintiff participated, and in four of which he engaged directly in the betting; that the several persons to whom the plaintiff so advanced such moneys at the request of the defendant, and the amount advanced to them, respectively, were as follows: To A., $253;

to B., $184; to L., $166; to M., $81; and to S., $138,—amounting in all to $822. At the close of the testimony on the part of the plaintiff, the court directed a nonsuit, and from the judgment entered thereon the plaintiff brings this appeal.

The undisputed evidence is to the effect that the defendant engaged in four of the games of poker mentioned, with the plaintiff and other gentlemen; that the defendant also engaged in one other of the games of poker mentioned, to wit, that in which he lost to S., at which the plaintiff was present, and witnessed the same throughout; that the defendant lost the several amounts stated in such games, respectively, but paid none of such losses himself; that all of such games were played at the "Progress Club and Brown Hotel," therein mentioned; that it was a rule of such clubs, generally, for a member of the club who introduced a stranger to be responsible for his losings, whether he was directed by the loser to pay or not; that the defendant was a stranger to the club at the time of the games mentioned; that the defendant lost in the first of such games, and told the plaintiff to make his losses good, and he would settle with him for the amount; that the defendant told the winner of that game that the plaintiff would fix it up with him; that each and all of such five persons who so won from the defendant were present when the defendant made such statements; that the defendant repeated such statements at the close of each of such five games; that the defendant told the plaintiff to pay such losses, and he would make it all right with him, and the plaintiff told him he would pay his losses after the games, respectively, were ended; that the defendant told each of such five several winners that the plaintiff would settle for him; that the plaintiff did so advance to the several winners the several sums mentioned, in pursuance of such requests of the defendant; that at the close of the several games the defendant gave to the plaintiff written memoranda of his

several losses to be so' advanced and paid by the plaintiff; that two days after the games the defendant wrote to the plaintiff a letter, asking him to wait on him for about two weeks, and that he would then make such payments; that some three months afterwards the defendant again wrote to the plaintiff that he had treated the plaintiff shamefully, but had been unfortunate, and was unable to pay him anything.

The contention is that such evidence brings the case within the condemnation of our statute which declares, in effect, that "All promises, agreements, notes, bills, bonds or other contracts, . . . where the whole or any part of the consideration of such promise, agreement, ، . . or other security shall be for money or other valuable thing whatsoever won or lost, laid or staked, or betted at or upon any game of any kind or under any name whatsoever, or by any means, . . . or for the repayment of money or other thing of value, lent or advanced at the time and for the purpose, of any game, play, bet or wager, or of being laid, staked, betted or wagered thereon shall be absolutely void." Sec. 4538, Stats. 1898. The promise, agreement, or contract upon which this action is brought was certainly of the kind declared to be illegal and void by that statute. The amount lost by the defendant, and won by the winner of each of the five games, was the only consideration for the promise. The promises were made at the time and for the purposes of the games. The defendant was apparently a stranger to all present, except the plaintiff. The rule of such clubs, generally, as indicated, is that the member who introduces a stranger is responsible for his losings, whether directed by the loser to pay or not. Here the plaintiff was directed by the defendant at the time of, and before the conclusion of, the first game, to pay such losings, and the plaintiff promised to do so. Of course, penal statutes must be strictly construed. But the case proved clearly comes within the language of the statute, and, if it is applicable, the alleged

promise is void. *Barnard v. Backhaus*, 52 Wis. 593; *Everingham v. Meighan*, 55 Wis. 354; *Plank v. Jackson*, 128 Ind. 424. In this country wagering contracts have been held to be void even at common law, and in the absence of statute. *Bunn v. Riker*, 4 Johns. 426; *S. C.* 4 Am. Dec. 292; *Rust v. Gott*, 9 Cow. 169; *S. C.* 18 Am. Dec. 497; *Bettis v. Reynolds*, 12 Ired. Law, 344; *S. C.* 55 Am. Dec. 417; *Emerson v. Townsend*, 73 Md. 224.

But there is a question of practice involved, which seems to have been overlooked by counsel on both sides. The gambling in question was in the city of Denver, Colorado. The case, therefore, does not come under the statute of this state quoted. The answer fails to allege the state in which the gambling occurred,— much less, to plead the statute of that state against gambling. No such statute appears in the record, and counsel for the defendant admitted upon the argument that such statute was not offered in evidence. Counsel on both sides apparently assumed that, in the absence of all evidence on the subject, the statute of that state would be presumed to be the same as our own. Undoubtedly such presumption may be indulged in certain classes of cases. *Osborn v. Blackburn*, 78 Wis. 209. But such presumption is not to be indulged as to penal statutes. Thus, it was held by this court many years ago that there was no presumption that the usury laws of another state were the same as our own, but, to be available, they must be pleaded and proved. *Hull v. Augustine*, 23 Wis. 383. In a recent case it was said: "Presumptions as to foreign laws are generally confined to those states and countries in which the common law is the law of the land, as in the several states of this country and Great Britain, and even then they do not extend to such statutory enactments as are penal in their nature." *St. Sure v. Lindsfelt*, 82 Wis. 351, and the following cases there cited: *Murphy v. Collins*, 121 Mass. 6; *Cutler v. Wright*, 22 N. Y. 472; *Leonard v. Columbia S. N.*

Co. 84 N. Y. 48; *Smith v. Whitaker*, 23 Ill. 367; *Gunn v. Howell*, 27 Ala. 663; *S. C.* 62 Am. Dec. 785; 1 Greenl. Ev. § 43, and note. Counsel for the plaintiff cites sec. 1344, Mills's Ann. Stats. Colo., and frankly concedes in his brief, as he did in his oral argument, that such statute is "virtually the same as our" own, above quoted. We must assume that the same spirit of reciprocity was manifest in the trial court, and hence that it was there practically admitted on both sides that the statute of that state on the subject of gambling was substantially the same as our own. Had any objection been made on the part of the plaintiff in the trial court, the answer might, and probably would, have been amended, and the statute of that state proved. Under the circumstances of this case, we do not feel authorized to reverse the judgment, upon a point not raised by counsel, merely to compel the defendant to amend his answer, and allege and prove a fact which the plaintiff manifestly admitted in the court below, as he has in this court. By such admission, we must regard the section of the Colorado statute cited as being in evidence without objection; and under that statute we must hold that the agreement sued upon is based upon an illegal consideration, and is therefore void. Similar contracts have been held void under such statute by the highest court of Colorado. *Corson v. Neatheny*, 9 Colo. 212; *Eldred v. Malloy*, 2 Colo. 320.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.